# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**FREDDY LUGO,**

                **Plaintiff,**

**v.**                                    **Case No:   6:18-cv-1116-Orl-40LRH**

**COMMISSIONER OF SOCIAL SECURITY,**

                **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

Freddy Lugo ("Claimant") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability benefits.   Doc. 1.   Claimant raises two arguments challenging the Commissioner's final decision and, based on those arguments, requests that the matter be remanded for further administrative proceedings.   Doc. No. 20, at 10, 18, 22.   The Commissioner asserts that the decision of the Administrative Law Judge ("the ALJ") is supported by substantial evidence and should be affirmed.   *Id*. at 16, 21, 22.   The undersigned **RESPECTFULLY RECOMMENDS** that the Court **AFFIRM** the final decision of the Commissioner.

## I.        PROCEDURAL HISTORY.

On August 8, 2014, Claimant filed an application for disability insurance benefits.   He alleged that he became disabled on April 1, 2014.   R. 184–85.   His claim was denied initially and on reconsideration, and he requested a hearing before an Administrative Law Judge ("ALJ").   R. 101, 108, 109, 114.   A hearing was held before the ALJ on May 18, 2017, at which Claimant was

represented by an attorney.   R. 46–68.   Claimant and a vocational expert ("VE") testified at the hearing.   *Id.*

After the hearing, the ALJ issued an unfavorable decision finding that Claimant was not disabled.   R. 28–39.   Claimant sought review of the ALJ's decision by the Appeals Council.   R. 181.   On May 11, 2018, the Appeals Council denied the request for review.   R. 1–9.   Claimant now seeks review of the final decision of the Commissioner by this Court.   Doc. No. 1.

## II.   FACTUAL BACKGROUND.

### A.   Claimant's Medical Conditions.

Claimant has documented medical issues with his lumbar and cervical spine.   *See, e.g.*, R. 361–63, 431, 436, 465, 592, 595–98, 627, 642, 691.    He also has neck pain, as well as upper and lower extremity numbness and pain.   *See, e.g.*, R. 361, 372, 595, 642, 670–71, 727–28, 739.   He was prescribed medication for these conditions, and he was advised to engage in moderate exercise of at least 150 minutes per week.   *See, e.g.*, R. 16, 691, 728, 759.   Claimant also has a history of depression and other mental health concerns, such as excessive worrying and concentration issues.   *See e.g.*, R. 643–44, 727, 739, 750.   He was diagnosed with major depressive disorder in 2014 and was responsive to Zoloft.   R. 743.

In May 2015, after filing his claim for disability benefits, Claimant was also diagnosed with fibromyalgia.   R. 645.[1]   On May 6, 2015, Claimant sought treatment from Dr. Javaid S. Sheikh, M.D., a rheumatologist.   R. 645–49 (Exhibit 16F).[2]   The reason for the appointment was arthritis, unspecified.   R. 645.   A musculoskeletal examination ruled out synovitis, tendinitis, bursitis, joint

---

[1] Because the issues raised by Claimant primarily relate to his diagnosis of fibromyalgia, the undersigned has limited the detailed discussion of information from his medical records to those related to that condition.

[2] Several of the issues raised by Claimant relate to specific exhibits considered and cited by the ALJ. For ease of reference, where pertinent, the undersigned has included both the exhibit number and the record citation.

effusion, deformities, crepitus, enthesopathy, or nodules.   R. 648.   Claimant also denied suffering from carpal tunnel, gout, joint stiffness, leg cramps, muscle aches, shoulder pain, swollen joints, and/or weakness.   R. 646.   However, Claimant admitted suffering from arthritis, back problems, and painful joints.   *Id.*   Dr. Sheikh diagnosed Claimant with arthritis unspecified, cervical spondylolysis, lumbago, carpal tunnel syndrome, fibromyalgia/myositis, and osteoporosis.   R. 648. Dr. Sheikh prescribed oral medication for the fibromyalgia.   *Id.*

On November 11, 2015, Claimant presented again to Dr. Sheikh with the chief complaint of fibromyalgia.   R. 650 (Exhibit 17F).   According to Dr. Sheikh's progress notes, Claimant continued to complain of diffuse arthralgias/myalgias, along with prolonged morning stiffness, disturbed sleep, and fatigue.   *Id.*   Dr. Sheikh noted that Claimant was previously under the care of a pain clinic specialist and received cervical epidural injections.   *Id.*   During the appointment, Claimant at times both complained of and denied suffering from fatigue and disturbed sleep.   *Id.* Claimant denied suffering from headaches, weight loss, back pain/problems, carpal tunnel, gout, leg cramps, muscle aches, shoulder pain, swollen joints, weakness, and/or dizziness.   *Id.*      He also denied suffering from any ophthalmologic issues, glandular issues, respiratory or cardiovascular issues, dermatologic issues, and/or any problems with swallowing or dry mouth.   *Id.*   However, Claimant admitted to experiencing neck pain, arthritis, joint stiffness, painful joints, and tingling/numbness.   *Id.*   On examination, Dr. Sheikh noted joint tenderness all over and multiple trigger points, but no synovitis, crepitus, bursitis, or tendinitis, and normal range of motion.   R. 651. Dr. Sheikh assessed that Claimant has fibromyalgia associated with diffuse arthralgias and myalgias, fatigue, muscle weakness, and other somatic complaints.   *Id.*   Dr. Sheikh prescribed Claimant oral medication for his fibromyalgia and explained to Claimant the importance of an exercise program. R. 652.

On August 11, 2016, Claimant returned to Dr. Sheikh.   R. 703 (Exhibit 23F).   Dr. Sheikh advised Claimant to start an active physical therapy program, which should include fast walking, swimming, and weightbearing exercises.   *Id.*   Claimant was also advised to start a neck strengthening exercise program.   *Id.*   A physical examination revealed no cyanosis, clubbing, or edema in his extremities.   R. 705.   However, Claimant had joint tenderness all over and multiple trigger points, but normal range of motion.   *Id.*   Dr. Sheikh again noted that Claimant has fibromyalgia associated with diffuse arthralgias and myalgias, fatigue, disturbed sleep, muscle weakness, and multiple other somatic complaints.   *Id.*   In addition to advising Claimant about physical therapy, Dr. Sheikh prescribed oral medication for the fibromyalgia.   *Id.*

Claimant's primary care provider, Floridalia Cruz, M.D., also diagnosed him with fibromyalgia.   *E.g.*, R. 748.   On February 23, 2017, Claimant returned to Dr. Cruz for a follow up appointment regarding his fibromyalgia.   *Id.*   He reported that he still suffers from joint pains, but that one of the medicines prescribed for the joint pain helps as needed.   *Id.*   Claimant further stated that he has good days and bad days regarding his chronic pain, but that his chronic pain worsens his depression.   *Id.*

B.      Hearing Before the ALJ.

At the time of the hearing, Claimant was sixty years old.   R. 51.   Since the alleged disability onset date (April 1, 2014), Claimant testified that he performed some types of work, which included driving for Uber in 2015.   R. 54.[3]   He testified that he could not drive for Uber full time because he was not able to sit for that long; it was too painful to keep his foot on the gas pedal.   R. 62. Prior to the alleged disability onset date, Claimant worked filling vending machines from January

---

[3] The record demonstrates that Claimant also worked for Amazulu Transport Inc. From April 19, 2015 to July 25, 2015 and in October 2015.   R. 195–201.   In November and December 2015, he worked as a subcontractor with Rizen Fleet Logistic Inc.   R. 202–05.

2007 through March 2014.   R. 54–55.   From 1995 to 2006, he assembled cables for ambulances, a job he described as "cable maker."   R. 56, 61.

At the hearing, Claimant testified that he has three hernias in his neck and two in his back; fibromyalgia; and depression and anxiety.   R. 56.   He testified that the pain in his neck is constant and that the pain from the fibromyalgia was akin to being stuck with needles in his arms and legs. R. 57.   His prescribed medication sometimes helped with the pain.   R. 58.   Claimant estimated that he could sit for approximately 20 minutes before he had to stand up.   *Id.*   However, he can only stand for approximately 20 minutes because it begins to feel like he is walking on broken glass. *Id.*   Claimant estimated that the heaviest amount of weight he could pick up and carry for a distance was similar to a gallon of milk because his fingers are normally numb.   R. 59.   He stated that his hands and fingers were always numb, it hurt to bend over, he had problems climbing up stairs and steps, and cold weather affects his level of pain.   R. 59, 63.

At the hearing, the VE testified that Claimant's work history over the prior fifteen-year period was equivalent to coin collector and wire harness assembler, as defined in the Dictionary of Occupational Titles ("DOT").   R. 65.   The ALJ asked the VE to assume a hypothetical individual of Claimant's age, education, and work experience, who could perform no greater than light work, who could not climb ladders, ropes, or scaffolds; who was limited to performing all other postural activities on an occasional basis; and who could frequently reach and push/pull overhead with bilateral upper extremities.   *Id.*   Based on these limitations, the ALJ asked the VE whether such person could perform either of the two prior relevant jobs: coin collector or wire harness assembler. *Id.*   The VE testified that the job of wire harness assembler would fit that description, as generally performed but not as performed.   *Id.*   Counsel for Claimant posed an additional limitation to this hypothetical, that the person would not be able to complete a 40-hour workweek.   R. 66–67.   With

this limitation, the VE testified that there would be no work that the person could perform.   R. 67.

      C.    <u>The ALJ's Decision</u>.

      After considering the hearing testimony and the evidence of record, the ALJ found that Claimant met the insured status requirements of the Social Security Act through December 31, 2020. R. 30.   The ALJ concluded that Claimant had not engaged in substantial gainful activity since the alleged disability onset date.[4]   R. 30–31.   The ALJ found that Claimant had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; and fibromyalgia.   R. 31. These impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.   R. 33–34.   The ALJ concluded that Claimant's mental impairments were non-severe. R. 32–33.

      Based on a review of the record, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform light work, with additional limitations that Claimant can never climb ladders, ropes, or scaffolds; can occasionally perform all other postural activities (climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling); and can frequently push, pull and reach overhead with bilateral upper extremities.   R. 34.   In making this finding, the ALJ considered objective medical evidence and opinion evidence of record.   *Id.*   The ALJ outlined the evidence on which he relied in the decision.   R. 36–38.   The ALJ noted the following in the decision as it relates to Claimant's fibromyalgia:

> Seeking evaluation for "diffuse arthralgias and myalgias" in May 2015, the claimant was assessed with fibromyalgia and started on medications including Wellbutrin XL and Neurontin.   Exhibit 16F/4.   Despite this assessment, contemporaneous musculoskeletal examination confirms no synovitis, tendinitis, bursitis, joint effusion, deformity, crepitus, enthesopathy, or nodules.   Exhibit 16F/4.   While records of November 2015 describe joint tenderness and non-specific trigger points, the claimant retains normal range of motion and there are no obvious focal neurologic

---

[4] Although Claimant worked after the alleged disability onset date, the ALJ concluded that it qualified only as an unsuccessful work attempt.   R. 30–31 (citing 20 C.F.R. §§ 404.1574(c), 404.1575(d)).

abnormalities.   Exhibit 17F/2.   Although Javaid Sheikh, MD's November 2015 assessment describes the claimant's fibromyalgia as associated with "fatigue, disturbed sleep, muscle weakness along with multiple other somatic complaints," the claimant denies fatigue, headache, sleep disturbance, weight loss, dizziness, back problems, carpal tunnel, leg cramps, muscle aches, pain in shoulders, swollen joints, and weakness on review of systems.   Exhibit 17F/1, 2; *see also* 21F/3, 23F/2.

I evaluated the objective evidence in assessing the claimant's residual functional capacity, particularly limiting him to light work with appropriate postural and manipulative limitations. In spite of the claimant's impairments, physical examination routinely confirms no joint tenderness, no deformities, no crepitance, no defects, dislocations or subluxation, no asymmetry, no effusions, no atrophic muscles, no tender muscles, and no weakness. Exhibit 3F/10, 12F/4, 18.   The claimant retains full range of motion and 5/5 strength of the upper and lower extremities with normal gait, erect posture, and the ability to walk on heels and toes without difficulty.   Exhibit 3F/10, 4F/21, 9F/4, l0F/6, 12F/4, 18, 16F/4. Specifically, motor examination confirms 5/5 strength in all major muscle groups including deltoid, bicep, tricep, wrist extensors, finger flexors, hand intrinsics, iliopsoas, quad, tibialis anterior, EHL, and gastroenemius.   Exhibit 20F/1.

The combined effects of the claimant's degenerative disc disease of the cervical and lumbar spine and fibromyalgia limit the weight the claimant can reasonably lift and carry to 20 pounds occasionally and 10 pounds frequently and the duration of sitting, standing, and walking to 6 hours each throughout a typical 8-hour workday. Manipulative limitations are consistent with the claimant's cervical degenerative disc disease with physical examination confirming 5/5 muscle strength in all major muscle groups of the bilateral upper extremities.   Exhibit 12F/4.   Exertional, postural and manipulative limitations reflect the combined effects of the claimant's physical impairments, non-severe impairments, and any side effects of medication, and the claimant's residual functional capacity to perform a reduced range of light work takes into account some pain symptoms which are reasonably caused by his medically determinable impairment.

R. 35–36.

As to Claimant's credibility regarding his alleged limitations based on his medical impairments, the ALJ concluded: "although the claimant has medically determinable and severe impairments, these impairments do not cause the degree of limitation he has alleged.   In contrast to the claimant's allegations, the objective medical evidence and other evidence of record contain numerous inconsistencies and contradictory statements regarding the claimant's symptoms and treatment throughout the claimed period of disability."   R. 36.   The ALJ then outlined the evidence

on which he relied.  R. 36–38.  For example, a routine medical evaluation in September 2014 documented no complaints except persistent erectile dysfunction.  R. 36 (Exhibit 7F). Documented persistent neck pain from December 2014 confirmed that pain could be controlled with no limb weakness or sensory disturbance, and with good coordination.  *Id.* (Exhibit 12F). Although Claimant testified to numbness in his extremities and feeling as though he was standing on glass, medical records documented improvement with oral medication as needed, and that Claimant had normal sensation to touch, pin, vibration, and proprioception on examination.  *Id.* (Exhibits 22F, 25F).[5]

The ALJ noted that although Claimant testified as to his ability to sit, stand, and walk for only 20 minutes at a time, records confirmed his ability to exercise 30 to 60 minutes with daily walks and travel.  R. 36–37.  The ALJ also found that if Claimant were truly as limited as he alleged, his physicians would not advise him to engage in moderate exercise of at least 150 minutes per week.  R. 37.  Although Claimant lost his job in 2014, the ALJ noted that medical records subsequent to his job loss demonstrated improvement.  *Id.*  In addition, the ALJ found that Claimants' "active job search with admission of work capabilities does not reflect a functional inability to sustain work," instead suggesting "that he has remained unemployed or underemployed because of an inability to get work and the hiring practices of employers in his area."  *Id.*  Overall, the ALJ found that the record evidence demonstrated that Claimant's symptoms had improved or

_____

[5] In considering the other evidence of record, the ALJ afforded great weight to the opinion of state agency physician Larry Meade, D.O. who reviewed Claimant's records and opined that Claimant retained an RFC consistent with light exertional level, and his opinion was consistent with the record as a whole.  R. 37. The ALJ noted, however, that this record was from Claimant's initial disability determination, while Claimant's records as to his fibromyalgia were submitted at the reconsideration level.  *Id.*  The ALJ also afforded little weight to temporary restrictions offered by Dr. Carlos Norman on a Worker's Compensation Form because those findings were inconsistent with the record.  R. 38.  The ALJ afforded no weight to the initial level RFC assessment by the Single Decision Maker because she was not an acceptable medical source. *Id.*  The ALJ also reviewed the statements of Claimant's wife and son, which he afforded little weight because the record did not corroborate the limitations alleged.  *Id.*

stabilized with treatment, and conservative treatment measures such as physical therapy, exercise, and prescription medication were expected to further improve Claimant's health.  R. 38.

Based on the ALJ's review of the record and the testimony of the VE, the ALJ concluded that Claimant was capable of performing past relevant work as a wire harness assembler, as that job is generally performed in the national economy.  R. 39.   Thus, the ALJ concluded that Claimant was not disabled.  *Id.*

## III.   STANDARD OF REVIEW.

Once a Claimant has exhausted his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).   The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence.   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).   The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence.   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).   The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence.   *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

IV.    ANALYSIS.

In the Joint Memorandum, which I have reviewed, Claimant raises two assignments of error: (1) the ALJ erred in his RFC determination that Claimant could perform light work after failing to properly analyze his diagnosis of fibromyalgia and consider evidence pertinent thereto; and (2) the ALJ erred in finding Claimant's testimony "not entirely consistent with the medical evidence and other evidence" of record.   I will address each of these contentions in turn.

A.    Evidence of Fibromyalgia & the RFC Determination.

An individual claiming Social Security disability benefits must prove that he or she is disabled.   *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).   The five steps in a disability determination include: (1) whether the claimant is performing substantial, gainful activity; (2) whether the claimant's impairments are severe; (3) whether the severe impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant can return to his or her past relevant work; and (5) based on the claimant's age, education and work experience, whether he or she could perform other work that exists in the national economy.   *See generally Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).   Before step four, the ALJ must first assess a claimant's RFC. *See id.* at 1238 (citing 20 C.F.R. § 404.1520(a)(4)(iv)).   "[T]he regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments," which includes consideration of "all the relevant medical and other evidence in the case."   *Id.* (citations and quotations omitted).

Claimant's contentions before this Court relate to the ALJ's RFC determination that Claimant could perform light work.[6]   Doc. No. 20, at 10–16.   Although the ALJ found that

---

[6] The social security regulations define light work to include:

Claimant suffered from fibromyalgia, among other severe impairments, the ALJ concluded that Claimant could perform light work, with additional limitations that Claimant can never climb ladders, ropes, or scaffolds; but that he could occasionally perform all other postural activities (climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling); and could frequently push, pull and reach overhead with bilateral upper extremities.  R. 34.    Claimant argues that although the ALJ explained Claimant's fibromyalgia diagnosis and resulting limitations, the ALJ appeared to have "a flawed understanding" of Claimant's condition.   Doc. No. 20, at 12–14.

Social Security Ruling 12-2p ("SSR 12-2p") provides guidance regarding the evaluation of fibromyalgia ("FM"):

> FM is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months. FM is a common syndrome.  When a person seeks disability benefits due in whole or in part to FM, we must properly consider the person's symptoms when we decide whether the person has an MDI [medically determinable impairment] of FM.   As with any claim for disability benefits, before we find that a person with an MDI of FM is disabled, we must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity
>
> . . . .
>
> If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms.

---

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b), 416.967(b).

SSR 12-2P, 2012 WL 3104869 (S.S.A. July 25, 2012).[7]   Fibromyalgia "often lacks medical or

laboratory signs, and is generally diagnosed mostly on an individual's described symptoms."

*Moore*, 405 F.3d at 1211 (citing *Stewart v. Apfel*, No. 99-6132, 245 F.3d 793, 2000 U.S. App. LEXIS

33214, at *9 n.4 (11th Cir. 2000)).

Claimant first asserts that the ALJ seemed to be "searching for some sort of objective

evidence" of Claimant's fibromyalgia condition, which the Eleventh Circuit has cautioned against.

Doc. No. 20, at 13–14; *see Moore*, 405 F.3d at 1211 (noting that the "hallmark" of fibromyalgia is

a "lack of objective evidence").   To be sure, the ALJ first stated that he considered the objective

medical evidence of record (Exhibits 3F, 4F, 9F, 10F, 12F, 16F, 20F).   R. 36.   However, this was

not the only evidence on which the ALJ relied in reaching his conclusion regarding the nature of

Claimant's impairments.   Rather, the ALJ found that the medical record evidence *and other*

*evidence in the record* was inconsistent with Claimant's testimony concerning the intensity,

persistence, and limiting effects of his impairments.   R. 36–37.   As an example, the ALJ cited

Claimant's confirmation during a September 2014 routine medical evaluation that he had no

complaints except persistent erectile dysfunction.   *See* R. 545 (Exhibit 7F).   The ALJ also cited a

December 2014 treatment note demonstrating that Claimant's pain can be controlled with no limb

weakness or sensory disturbances, and that Claimant had good coordination.   *See* R. 621 (Exhibit

12F).   The ALJ further noted that although Claimant testified as to numbness in his extremities and

feeling as though he is standing on glass, this testimony conflicted with medical records that

_____

[7] In the decision, the ALJ noted that he considered SSR 12-2P.   R. 34.   "Social Security Rulings are agency rulings 'published under the authority of the Commissioner of Social Security and are binding on all components of the Administration.'"   *Miller v. Comm'r of Soc. Sec.*, 246 F. App'x 660, 662 (11th Cir. 2007) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990)).   However, agency rulings are not binding on this Court.   *See id.*   "Even though the rulings are not binding on us, we should nonetheless accord the rulings great respect and deference. . . ."   *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010).

documented symptom improvement with medication as needed, and that Claimant had normal sensation to touch, pin, vibration, and proprioception on examination.  *See* R. 678 (Exhibit 22F); R. 711–12 (Exhibit 25F).   The ALJ also cited other evidence of record demonstrating Claimant's ability to engage in physical exercise programs; physician advice to engage in moderate exercise of at least 150 minutes per week; Claimant's active job search; and that Claimant's symptoms had improved or stabilized with treatment.   R. 36–38 (Exhibits 3F, 6F, 17F, 22F, 23F, 27F, 28F, 31F). The ALJ further relied on the opinion of the state agency physician, Larry Meade, D.O., who opined that Claimant had an RFC consistent with light exertional level, which was "consistent with the clinical findings demonstrated throughout the claimed period of disability."  R. 37; *see* R. 95–96 (Exhibit 3A).   The ALJ also noted other evidence of record that was not consistent with the record as a whole, such as limitations on a Worker's Compensation form and the statements of Claimant's wife and son.   R. 38.   Thus, the ALJ provided a detailed factual basis for his RFC determination, and the citation to the objective medical evidence in the decision was not error.  *Cf. Moore*, 405 F.3d at 1212 (rejecting similar argument regarding a claimant's credibility where "the ALJ provided a detailed factual basis for his credibility determination, which did not turn on the lack of objective evidence documenting fibromyalgia").

Claimant next contends that the ALJ mischaracterized the evidence on which he relied when the ALJ stated that claimant denied "fatigue, headache, sleep disturbance, weight loss, dizziness, back problems, carpal tunnel, leg cramps, muscle aches, pain in shoulders, swollen joints, and weakness."   Doc. No. 20, at 14; *see* R. 35.   Claimant points out that one of the treatment records (Exhibit 17) on which the ALJ relied also states that Claimant admitted to arthritis, joint stiffness, and painful joints.   *Id.*; *see* R. 650–52.   Nonetheless, Claimant fails to demonstrate how the ALJ mischaracterized the evidence.   The treatment note cited by the ALJ indeed documents that

Claimant denied the symptoms exactly as the ALJ stated.   *See* R. 650–52 (Exhibit 17: noting that Claimant denied fatigue; headache; sleep disturbance; weight loss; dizziness; back problems; carpal tunnel; leg cramps; muscle aches; shoulder pain; swollen joints; and weakness; among other conditions).   Moreover, the treatment notes Claimant points to demonstrate additional inconsistencies in his own presentation of complaints—at the same appointment Claimant both complained of and denied suffering from fatigue and sleep disturbances.   R. 650–52.

Claimant also argues that the ALJ failed to consider that Claimant returned to Dr. Sheikh on August 11, 2016, during which appointment Dr. Sheikh noted that Claimant complained of diffuse arthralgias/myalgias, along with prolonged morning stiffness, disturbed sleep, fatigue, and numbness/tingling involving his joint tenderness all over and multiple tender points. Doc. No. 20, at 14, 15 (citing Exhibit 23F, R. 704–05).   However, the ALJ specifically cited to that treatment note in his analysis.   R. 35.   The ALJ also noted a substantially similar finding on the November 2015 office visit, and cited the August 11, 2016 treatment note in support.   *See id.* ("Although Javaid Sheikh, MD's November 2015 assessment describes the claimant's fibromyalgia as associated with 'fatigue, disturbed sleep, muscle weakness, along with multiple other somatic complaints' . . . ." (citing Exhibits 17F, 21F & 23F)).[8]   Accordingly, this does not establish reversible error.[9]

---

[8] Exhibit 23F contains Dr. Sheikh's treatment notes from the August 11, 2016 visit.

[9] In assessing a claimant's RFC, the ALJ must state with particularity the weight given to different medical opinions and the reasons for that determination.   *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).   Here, the decision does not reflect an explicit credibility finding by the ALJ as it relates to Dr. Sheikh. Claimant does not raise that issue before this Court.   Even if he had, in this case it does not appear that any such argument would be meritorious because in the decision the ALJ discussed the content of Dr. Sheikh's treatment notes, demonstrating that he considered and gave weight to this medical evidence.   *See, e.g.*, *Laurey*, 632 F. App'x at 987 ("On review, we find no reversible error.   Although the ALJ never stated the weight given to Dr. Frailing's treatment notes, the ALJ discussed the content of Dr. Frailing's notes, showing that the ALJ considered and gave weight to this medical evidence.").

Claimant next points out that Exhibit 21F, which the ALJ cited in support of the finding that Claimant denied "fatigue, headache, sleep disturbance, weight loss, dizziness, back problems, carpal tunnel, leg cramps, muscle aches, pain in shoulders, swollen joints, and weakness" was from the Center for Colon and Rectal Surgery, which was unrelated to the treatment of fibromyalgia.   Doc. No. 20, at 14; *see* R. 673–76.   It is unclear why the ALJ cited this medical record in support of the analysis of Claimant's fibromyalgia.   Nonetheless, Claimant has not demonstrated, and does not cite any authority demonstrating, that an ALJ errs in citing medical records from other treating sources in determining the extent of a claimant's impairments.   Nor does it appear to be error.   *See* SSR 12-2P, 2012 WL 3104869 (S.S.A. July 25, 2012) (emphasis added) ("We base our RFC assessment on *all relevant evidence in the case record*.").

Finally, Claimant argues that the ALJ failed to accurately note findings of objective testing, specifically Exhibit 16F regarding a cervical MRI performed in December 2014.   Doc. No. 20, at 15.   According to Claimant, had the ALJ properly characterized this evidence, perhaps the ALJ would have reached a different conclusion regarding Claimant's RFC.   *Id.* at 16.   As an initial matter, the ALJ stated in his decision that "[i]maging of the cervical spine reflects disc protrusions and/or herniations at multiple levels with no evidence of cord compression or nerve root entrapment as of May 2015."   R. 33 (citing Exhibit 16F).   A review of Exhibit 16F, which is comprised of Claimant's treatment records from Dr. Sheikh on May 6, 2015, indeed states that "MRI cervical spine revealed evidence of disc protrusion/disc herniations at multiple levels.   There was facet arthropathy but no evidence of cord compression or nerve root entrapment."   *See* R. 645.   Thus, it is clear that the ALJ properly characterized the evidence on which he relied, indeed the ALJ essentially quoted from Exhibit 16F verbatim.   Claimant, however, cites to a different treatment record, Exhibit 13F, from December 2014 to support his position.   *See* Doc. No. 20, at 16 (citing

R. 635–36, Exhibit 13F).   This is insufficient to establish reversible error.   *See, e.g.*, *Moore*, 405 F.3d at 1213 ("To the extent that Moore points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from 're-weigh[ing] the evidence or substitut[ing] our judgment for that [of the Commissioner] . . . even if the evidence preponderates against' the decision.").

Nonetheless, even interpreting Claimant's argument to be that the ALJ mischaracterized the evidence by citing to Exhibit 16F (Dr. Sheikh's medical record describing the MRI results) instead of explicitly addressing Exhibit 13F (the MRI results from Stand-Up MRI of Orlando), this position is untenable for at least three reasons.   First, it would require the Court to conclude that Dr. Sheikh's treatment record included an inaccurate characterization of the December 2014 MRI results. Claimant does not make this argument in the Joint Memorandum.   *See* Doc. No. 20, at 16.   Thus, the Court should not consider it.   *See, e.g.*, *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it.").

Second, it is not facially apparent that Dr. Sheikh's interpretation of the December 2014 MRI results—"MRI cervical spine revealed evidence of disc protrusion/disc herniations at multiple levels.   There was facet arthropathy but no evidence of cord compression or nerve root entrapment"—was inconsistent with the actual results of the December 2014 MRI.   *Compare* R. 635 (Exhibit 13F), *with* R. 645 (Exhibit 16F).   The MRI record documents multiple disc protrusions and herniations as well as facet hypertrophy.   R. 635–36.   And it states that the "cervical cord structures are normal."   R. 635.

Third, in the portion of the decision with which Claimant takes issue, the ALJ's discussion of Exhibit 16F was related to his consideration of whether Claimant's impairments, or a combination

of his impairments, met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* R. 33–34.   In this portion of the decision, the ALJ was not addressing Claimant's RFC. *See id.*   Therefore, Claimant's contention that the ALJ could have possibly reached a different result regarding Claimant's RFC had he properly characterized the findings from the December 2014 MRI, *see* Doc. No. 20, at 16, is unpersuasive.

For these reasons, the ALJ's determination as to Claimant's RFC is supported by substantial evidence, and the undersigned recommends that the Court reject Claimant's first assignment of error.

      B.    <u>The Credibility of Claimant's Testimony</u>.

In Claimant's second assignment of error, he contends that the ALJ erred in finding that his testimony was not entirely consistent with the medical evidence and other evidence of record because "the record clearly reveals that [he] suffered from documented impairments causing significant limitations."   Doc. No. 20, at 19.

"When a claimant attempts to establish a disability through his own testimony about pain or other subjective symptoms, the ALJ must apply a three-part 'pain standard.'"   *Wilson v. Comm'r of Soc. Sec.*, 500 F. App'x 857, 859 (11th Cir. 2012)[10] (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)).

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.

---

[10] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority.   *See* 11th Cir. R. 36–2.

*Foote*, 67 F.3d at 1560 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).   However, "[i]f the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so."   *Foote*, 67 F.3d at 1561–62.

Claimant first argues that the ALJ's credibility determination was nothing more than "boilerplate type language commonly found in Social Security decisions."   Doc. No. 20, at 20. To be sure, in the decision, the ALJ stated that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Claimant's] statements concerning the intensity, persistence and limiting effects of those symptoms are not fully supported for the reasons explained in this decision."   R. 37.   Generally, "[i]n the absence of a cogent discussion of the credibility determination, the statement is too general to permit meaningful judicial review."   *McKinney v. Astrue*, No. 8:08-cv-2318-T-TGW, 2010 WL 149826, at *3 (M.D. Fla. Jan. 15, 2010) (citations omitted).   However, in this case, the ALJ provided discussion and analysis of the medical records, opinion evidence, and Claimant's testimony both prior to and following this assertion.

Specifically, as discussed above, the ALJ considered objective medical records contradicting Claimant's assertions, R. 36, Claimant's exercise regime, medical recommendations to engage in more exercise, and Claimant's job search, R. 37, opinion evidence from the State Agency medical consultant, R. 37–38, and that Claimant's symptoms have improved or stabilized with treatment, R. 38.   All of these considerations clearly show that the ALJ provided "explicit and adequate reasons" for his credibility finding.   *See Foote*, 67 F.3d at 1561–62; *see also Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 879–80 (11th Cir. 2014) (affirming denial of disability benefits where the ALJ found substantial record evidence suggesting that the claimant's functional limitations were not as severe as alleged and where the ALJ found several inconsistencies between the claimant's

subjective complaints and the objective evidence of record); *see also Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 978, 988 (11th Cir. 2015) ("The mere fact that the ALJ determined that [the claimant's] fibromyalgia was a 'severe impairment,' however, does not mean that the ALJ was required to attribute severe pain to her fibromyalgia." (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986))).

Claimant next argues that the ALJ's finding regarding Claimant's ability to exercise 30 to 60 minutes is insufficient to find him not credible because "participation in everyday activities of short duration, such as housework or fishing, does not disqualify a claimant from disability."   Doc. No. 20, at 20 (citing *Lewis*, 125 F.3d at 1441).   However, an ALJ properly considers daily activities at the fourth step of the sequential evaluation process.   *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (citing 20 C.F.R. § 404.1520(e)).   Moreover, in addition to citing Claimant's ability to exercise, in making the credibility determination, the ALJ cited to the objective medical evidence and other evidence of record undermining Claimant's testimony, as detailed above.   "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."   *Foote*, 67 F.3d at 1562.   "The question is not . . . whether the ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it."   *Werner v. Comm'r, of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). Accordingly, because the ALJ provided explicit and adequate reasons for finding Claimant's assertions of pain and objective symptoms not entirely credible, Claimant's second assignment of error is not well-taken.

**V.     RECOMMENDATION.**

Upon consideration of the foregoing, it is **RESPECTFULLY RECOMMENDED** that the final decision of the Commissioner be **AFFIRMED**.   It is further **RECOMMENDED** that the

Court direct the Clerk of Court to issue a judgment consistent with its Order on the Report and Recommendation and, thereafter, to close the file.

## **NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on June 14, 2019.

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy